## BREWSTER *vs.* POWER.

The trust which results in favor of creditors, under the provisions of the revised statutes relative to uses and trusts, where a grant is made to one person and the consideration therefor is paid by another, is only a trust in favor of those who were creditors, of the person paying the consideration, at the time when the conveyance was executed and such consideration was paid. And there is no resulting trust in favor of creditors whose debts are subsequently contracted.

Where there is a resulting trust in favor of the creditors of the person who pays the consideration for real estate and takes a conveyance in the name of another, in fraud of their rights, it seems that a judgment recovered by one of such creditors is in equity a lien upon such real estate, except as against bona fide purchasers without notice ; although such estate cannot be sold under an execution upon the judgment.

Upon the sale of mortgaged premises upon a statute foreclosure, where the premises are struck off to the mortgagee, the affidavits of the publication and of the affixing of the notices of the sale and of the circumstances of the sale, have the same effect, in vesting the title in the mortgagee, as a deed would have in vesting the title in a stranger who had become a purchaser. And parol evidence is not admissible, to prove that the premises were purchased in trust for a third person, and not for the benefit of the mortgagee in whose name the purchase was made, to establish a trust in favor of such third person.

The interest which a judgment debtor has in lands, under an executory contract of purchase, cannot be sold upon execution, under the provisions of the revised statutes. Nor is his equitable interest in the premises, under such a contract, bound by the docketing of the judgment.

THIS was an appeal from a decree of the vice chancellor March 5. of the seventh circuit, dismissing the complainant's bill with costs. The object of the bill was to obtain from the defendant Abiathar Power, a conveyance of the title to the undivided half of a lot of land in the county of Ontario, under the following circumstances : Arthur Power, who owned the whole lot, conveyed it to R. W. Brace, in June, 1828 ; Brace paid down $300 of the purchase money and gave a mortgage upon the premises, and two notes as collateral security, for $550,50 and interest, for the balance. Brace having died without paying the mortgage, an arrangement was made with his representatives and with the mortgagee, by which the mortgage was to be assigned to the defendant and his son-in-law J. H. Ford, and was to be foreclosed, and they were to give the representatives of Brace $100 for their interest in the premises. The defendant and Ford accordingly, in June or July, 1830, gave their joint note to the mortgagee, for the amount of the mortgage and interest, and also their joint note to the representatives of Brace for the $100, and the mortgage was thereupon assigned to the defendant and Ford. They immediately advertised the property for sale under the statute, in their joint names as assignees, and on the 14th of January, 1831, the premises were sold and were bid in for the sum of $379,72, in their joint names as such assignees ; and the affidavits of the publication, and of the regularity of the sale, were made and duly recorded the

next day thereafter. In the spring of 1834 Ford failed, and gave a judgment to his brothers-in-law, upon a bond and warrant for $8000, conditioned for the payment of about $4000 ; which judgment was docketed on the 5th of April, 1834. Under this judgment all the interest of Ford in the lot in question was sold by the sheriff, in November, 1834, to W. Power, one of the plaintiffs in the judgment, for $600 ; the bidders at the sale being informed by him that Ford, the defendant in the judgment, only owned one half of the lot.

In May, 1834, J. C. Brewster, the original complainant in this suit, recovered a judgment against Ford for about $275 ; under which judgment Brewster redeemed from the sale to W. Power, and took a deed from the sheriff, in February, 1836. Shortly thereafter the complainant filed his bill in this suit, alleging among other things that the purchase and foreclosure of the bond and mortgage were made for the sole benefit of Ford ; that the defendant executed the notes with him as a mere surety, and with the understanding that the defendant was to have no interest in the assignment further than to indemnify him as such surety ; and that Ford afterwards paid the whole amount of the notes, given to the mortgagee and to the representatives of Brace by himself and the defendant. And the complainant prayed that the defendant might be decreed to release the premises to him, and to deliver up the possession thereof, and to account for the rents and profits, &c.

The defendant, by his answer, denied that the mortgage was purchased and foreclosed for the sole benefit of Ford, and alleged that he originally made the arrangement for the purchase of the mortgage on his own account, and afterwards consented to take in Ford, his son-in-law, to be jointly interested with him, and that they gave their joint notes for the purchase money, and each paid his half thereof; except that he signed a note with Ford for $150 to J. Smith, to enable Ford to make his half of one of the payments, and for which Ford agreed that he should have a lien upon his half of the premises for his security, and except that Ford

turned out a note upon another payment, which exceeded about $50, his share of such payment, for which the defendant afterwards accounted with him, upon a settlement made between them in January, 1836. The defendant also, in answer to an allegation in the bill that Ford had the exclusive possession of the premises from the time of the purchase of the mortgage, stated that immediately after the arrangement for the purchase of the mortgage he and Ford took possession of the premises, and that it was then agreed between them that the defendant should have the use of the pasture, and Ford of the plough-land, and that Ford should pay the taxes on the whole ; and that they thus occupied the same until the spring of 1834, when they made a different arrangement and occupied different portions of the plough-land and pasture in severalty, during that year and the next. Much testimony was taken in relation to the matters put in issue between the parties, and some as to matters not in issue ; and the cause was heard before the vice chancellor upon pleadings and proofs, after the death of the original complainant, and after the suit had been revived in favor of the appellant, as his surviving devisee and executor.

*L. H. Sandford*, for the appellant. The purchase of the premises in question, at the mortgage sale, was for the sole and individual benefit of Ford. The defendant was associated with Ford merely as surety, and the mortgage was assigned to them jointly to indemnify the defendant as such surety ; and the bid was made in their joint names at the mortgage sale, to make this indemnity effectual. The evidence shows that Ford paid for the land, whereby the defendant's lien, which was in the nature of a mortgage, became satisfied. If the defendant had an equitable lien on the land, he cannot set it up now, having claimed to be the absolute owner of the undivided half of the land, in fraud of Ford's creditors. The answer contradicts itself and is discredited by the proofs, and is therefore not evidence for the defendant. The defendant's right, if any, being a mere mortgage interest, can be shown by parol evidence. (1

*John. Ch. Rep.* 594. 4 *Id.* 167.) So a resulting trust, as where one purchases land with his own money but takes a deed in the name of another, may be proved by parol. (1 *John. Ch. Rep.* 582. 2 *Id.* 405.) If it be said that the revised statutes have altered the law of trusts, the answer is, that the complainant was a creditor of Ford, and the claim of the defendant is presumed fraudulent as against him, Ford having paid the consideration for the land.

*A. Taber*, for the respondent. The case, if any, made by the complainant's bill, seems to be one of a simple resulting trust, created by the acts of the parties to the trust. It comes within no definition of a mortgage, legal or equitable. And the bill alleges no fraud, nor any indebtedness by Ford to any one, until after the legal title had vested, and the land was fully paid for. The gravamen of the bill, that Ford negotiated and paid for the whole of the land, is distinctly and positively denied in the answer. All or nearly all the evidence in the case upon these questions in controversy, except hearsay declarations, supports the answer and contradicts the bill. The evidence relied on by the complainant was for the most part inadmissible, and is altogether insufficient to establish a resulting trust, or in any manner to defeat the legal title and possession of real estate. (1 *Wend.* 625. 6 *John.* 19. 7 *Id.* 186. 10 *Id.* 336, 358. 6 *Wend.* 228, 277. 6 *Cowen*, 751.) But granting that the answer and the defendant's witnesses are all discredited, and the bill proved, still the complainant shows no right to the relief he asks for, nor any other in this court. The trust, if any, was created since the revised statutes, and if a valid one, the same statutes, for the express purpose of preventing oppressive litigation in this court, convert it into a legal estate which is vested in the complainant, and to enforce which he shows no valid reason in his bill for coming into this court. But it is not a valid trust ; it is declared void by statute. And it vested no interest or title, legal or equitable, in Ford or in those claiming under him. Since the revised statutes, an equitable estate cannot be sold on an

execution at law, and for the recovery of a legal one thus sold, the aid of this court is neither necessary nor proper.

THE CHANCELLOR. There is no allegation in the bill that the defendant ever gave to Ford a conveyance of his interest in the undivided half of the premises, to which the defendant acquired the legal title by the purchase under the statute foreclosure. The evidence of the declarations of Ford as to the pretended quit claim deed must therefore be laid entirely out of the question, even if they could have been legal evidence against the defendant upon any state of pleadings. Besides, if an allegation of that kind had been contained in the bill, it would have rendered it de-murrable ; upon the ground that the remedy of the complainant, if any, was at law, by an ejectment suit to recover the possession of the undivided half of the premises claimed by the defendant.

The question then arises, admitting the allegations in the complainant's bill to be true, whether Ford had such an interest in the half of the premises which was struck off to the defendant, upon the statute foreclosure, as to render it liable to a sale by the sheriff upon execution, and to a redemption by a junior judgment creditor. Previous to the revised statutes if a person purchased real estate and paid for it with his own means, and took a conveyance of the legal title in the name of another, there was, in equity, a result-ing trust in favor of the one who paid the money ; except where it satisfactorily appeared that the purchase was intended as a gift or advancement to the person in whose name the conveyance of the legal title was taken. But such an equitable interest in land, where the legal title was in the person in whose name the conveyance was taken, could not be sold by the sheriff, upon execution against the cestui que trust, previous to the statute 29th Charles 2d, chapter 2d, § 10 ; which statute was adopted as a part of the law of this state, and continued in force here until the revised statutes went into effect, on the 1st of January, 1830. (See 1 R. L. of 1813, p. 74, § 4.) By that statute,

where the judgment debtor had the whole beneficial interest in the land by virtue of a resulting trust, a sale by virtue of an execution against such debtor operated to vest the legal title in the purchaser, under the sheriff's deed. And as a subsequent judgment against the cestui que trust was a lien in equity, though not at law, upon his interest in the land, probably the owner of such judgment, by the equity of the statute of the 12th of April, 1820, authorizing a redemption of lands sold on execution, would be authorized to redeem, and to take the title in his own name.

The revised statutes, however, made an entire change in the law on this subject. By the 51st section of the article of the revised statutes relative to uses and trusts, it is provided that where a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made ; but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions in the next section. (1 *R. S.* 728.) And the next section declares the conveyance to be presumptively fraudulent only as against persons who were at that time creditors of the person paying the consideration ; but not as against creditors whose debts were subsequently contracted. Here the legal title to one half of the lot in controversy passed to the defendant, by the purchase under the statute foreclosure, on the 14th of January, 1831. For by the 14th section of the article of the revised statutes relative to the foreclosure of mortgages by advertisement, (2 *R. S.* 547,) where the mortgaged premises are purchased at the sale by the mortgagee, or his assigns, the affidavits of the publication and of affixing the notice of sale, and of the circumstances of such sale, are not merely evidence of the regularity of the foreclosure ; but they are, without the formality of a conveyance, to have the same effect as a conveyance executed by a mortgagee to a third person upon such a sale would have had. No parol evidence, therefore, can be received to establish either an express or an implied trust as to this half of the premises, in

1844.

Brewster
v.
Power.

favor of Ford. And even if the defendant had given a written agreement to convey that half of the premises to Ford, upon his paying the whole amount of the purchase money of the mortgage, and the $100 to the representatives of Brace, Ford would not have had an interest in that half of the premises which could have been sold on execution against him. For by another provision of the revised statutes, (1 *R. S.* 744, § 4,) the interest of a person holding such an agreement is not bound by the docketing of any judgment or decree, nor can it be sold upon an execution. But to enable the creditor to reach such an interest of his debtor he must first exhaust his remedy at law, by the issuing of an execution and a return thereof unsatisfied, and then file a bill in this court, to have the defendant's interest sold and applied to the satisfaction of the judgment. To obtain such relief, the debtor himself also appears to be a necessary party. Here there is no pretence that the remedy of the complainant has been exhausted at law, by the return of an execution unsatisfied, nor is Ford the judgment debtor a party to the suit. On the contrary, the whole claim to relief proceeds upon the supposition that Ford had an equitable interest, in this half of the lot, which could be sold upon the execution at law, and that the complainant acquired that right by virtue of the redemption and the sheriff's deed.

The revised statutes having provided for a resulting trust in favor of creditors, whose debts are then existing, where the consideration for real property is paid by their debtor and the title is taken in the name of a third party in fraud of their rights, I am not prepared to say that a judgment for such a debt would not create a preferable lien in equity upon such real property, except as against a purchaser for a valuable consideration without notice, although such property cannot be sold upon execution on the judgment. (*See Forth* v. *The Duke of Norfolk*, 4 *Mad. Rep.* 504. *Lynch* v. *The Utica Insurance Company*, 18 *Wend. Rep.* 236.) But there can be no pretence in this case that there was a resulting trust, either in favor of the judgment credi-

tors upon whose judgment the interest of Ford in this lot was sold, or in favor of the original complainant in this suit. For none of the debts embraced in either of these judgments appear to have been contracted until long after the title to the lot was vested in the defendant and in Ford, as tenants in common under the statute foreclosure. Besides, the statute makes the payment of the purchase money by the debtor and the taking of the title in the name of another, only presumptive evidence of fraud, even as to existing creditors. And at the time of the statute foreclosure and sale, in January, 1831, there was no inducement to vest the title to one half of this land in the defendant for the purpose of defrauding the creditors of Ford. For that was more than three years before his failure. And no debts appear to have existed against him at that time, except those which were created by the purchase of this bond and mortgage and of the interest of the representatives of Brace ; for all of which debts the defendant was jointly holden.

No title whatever in this half of the lot, either legal or equitable, passed to the original complainant in this suit by virtue of the redemption and the deed of the sheriff. But he merely got—what W. Power professed to purchase at the sheriff's sale—the undivided half of the lot which belonged to Ford the judgment debtor. And as to that half, I have no doubt he got the title divested of any claim in favor of the defendant, on account of the Smith note, whether the amount of that note was or was not included in the judgment given by Ford to his three brothers-in-law.

This would of itself be sufficient to sustain the decree of the vice chancellor dismissing the bill. For the complainant comes into this court for relief upon the sole ground that he acquired an equitable interest in the defendant's half of the property by virtue of the sale and the sheriff's deed ; and he has not framed his bill in such a manner as to be entitled to ask for relief upon any other ground. But I cannot dismiss the case without expressing my opinion also, that the complainant has failed in showing that it was

ever the intention of the defendant and Ford that the bond and mortgage should be purchased for the purpose of acquiring the title to the whole lot for Ford exclusively, and that the defendant was a mere surety for him. The account of the transaction which the old gentleman gives in his answer is perfectly rational. And the fact which he states, that Ford agreed that if he did not pay for his half the defendant should be entitled to a claim upon that half for his indemnity, accounts for what is testified to by the witnesses, as to his only claim upon the land being for the payment of the note to Smith. The old gentleman was probably speaking of Ford's half of the lot, upon which half he supposed he had a claim to secure the payment of the note to Smith, which he had signed with Ford to enable the latter to raise his half of one of the payments due to the original mortgagee. But the witnesses, not understanding the subject, no doubt understood him as speaking of the title to the whole lot.

The decree appealed from must be affirmed with costs.