## Tracy *vs.* Tracy.

*In the matter of the estate of* Edward Tracy, *deceased.*

P. T. having purchased three lots of ground, and the deed being taken in the name of his brother, E. T., the latter subsequently sold two of the lots, deposited part of the proceeds in the Savings Bank, and invested the remainder on bond and mortgage. E. T. then left New York, and never having been heard from, his brother P. T. administered, and claimed the funds so invested and deposited, as his own .Although by our statute there is no resulting use or trust where a grant is made to one person upon a consideration paid by another, yet the payment forms a good moral consideration for a parol agreement to account for the proceeds; and when the grantee, after a sale, has made a parol declaration of trust as to the proceeds, the trust will be sustained in equity.

John Vanderbilt, *for next of kin.*

1. By the proof, the legal and equitable title of the moneys was in Edward Tracy, at the time of his death.

2. By *section 51, of R. S.,* 1 *vol., p.* 728, in case of a grant

for a valuable consideration made to one person, and the consideration paid by another, no use or trust shall result, in favor of the person by whom such payment was made, but the title vests in the grantee.

3. The exceptions in the 52d and 53d sections do not apply.

4. The transaction does not create any of the express trusts created by the 55th section of the statute.

On the general subject, on the last three heads, (*vide Hosford* vs. *Merwin*, 5 *Barbour Sup. Ct. Reports*, *p.* 57), Judge Harris says : "The resulting trust which the legislature intended to prevent, was a trust created by the act of the party claiming to establish such trust. The object of the legislature was to prevent the creation of passive and formal trusts, and to accomplish this object, it became necessary to declare void any secret resulting trust created by the voluntary payment by one person of the consideration of the conveyance to another. The legislature have carefully restricted the operation of this statute to cases in which the party claiming the benefit of the trust himself created it."

In this case, even if it be found that P. Tracy paid the consideration, he directed the deed to be made to E. Tracy, either for the purpose of defrauding his wife of her marriage right, or of defrauding the State of property which they would become entitled to, on his sentence for robbery to the State Prison.

*Proseus* vs. *McIntyre*, 5 *Barbour*, *p.* 424, *&c.* On page 433 the doctrine is recognized, that no trust would result in favor of the person paying the money.

*Norton* vs. *Stone*, 8 *Paige*, 222. This case recognizes that there can be no resulting trust under the Revised Statutes.

*Ostrander* vs. *Livingston*, 3 *Barb. Ch.. p.* 426, proves also that the same rule obtains in equity as well as at law. 1 *Story's Equity*, *p.* 671.

5. The Surrogate should not have permitted parol testimony, as against an absolute deed. (*Hunt* vs. *Amidon*, 4 *Hill*, 345. *Prosser* vs. *Luqueer*, 4 *Hill*, 420. *Cameron* vs.

*Irwin,* 5 *Hill,* 272. *Nelson* vs. *Sharp,* 4 *Hill,* 584. *Webb* vs. *Rice,* 6 *Hill,* 219. *Swick* vs. *Sears,* 1 *Hill,* 17. *Pattison* vs. *Hull,* 9 *Cow.,* 747.)

6. Even if it was proper to disprove the deed by parol, the agreement to sustain the alleged trust not being in writing, cannot be enforced. (*Movan* vs. *Hays,* 1 *Johnson's Ch'y.,* 341. *Steere* vs. *Steere,* 5 *Id.,* 11. *Cozine* vs. *Graham,* 2 *Paige,* 181. *Ontario Bank* vs. *Strong, Id.,* 301.)

7. The monies are claimed by the administrator in specie; their nature was never changed. He claims that the identical monies in the Savings Bank are the proceeds of the sale of the land sold by his brother Edward, now deceased, of which he alleges he is the *cestui que trust.* The same rule which governed the land governs the money. Edward was the legal and equitable owner against all the world. The petition is to call the administrator to an account. The administrator sets up that the money in the bank and the bond and mortgage are his, and that Tracy had no property.

J. B. SCOLES, *for administrator.*

1st. The statute relied upon was intended for the protection and benefit of third parties—creditors and others. So say the Revisers themselves, in their notes to the Revised Statutes. They observe that the separation of the legal and equitable estates in every such case appears to answer no good purpose, and it tends to mislead the public, and obscure titles and facilitate fraud. The object of the section in question is to prevent fraud. It must not be construed so as to promote fraud and perpetrate wrong. Where justice and honesty require that a trust should exist between parties by implication or otherwise, equity will raise it, unless there is some express statutory provision against its doing so. This is a fundamental principle of equity. There is no statutory

provision prohibiting it from doing so. There is no judicial interpretation of the statute which advances the position, that as between the parties themselves there may not be what is in *equitable effect* a resulting trust in prevention of fraud. Such trust may be shown by parol. (4 *Kent's Commentaries*, 305, 6. 5 *Barbour S. C. R.*, 51.)

2d. Should no such trust exist as between Edward and Patrick Tracy, the consideration money of the property in Sheriff-street having been advanced by Patrick Tracy, and the conveyance of the same being to Edward Tracy—Patrick Tracy had an equitable lien or charge upon said property to the amount of such consideration money advanced. The proceeds of said property are equally subjected to said lien or charge, and therefore the amount of the said consideration money, and interest, can be applied to his own use by the said Patrick Tracy, by virtue of such equitable lien or charge. (5 *Barbour*, 51.)

3d. Even if no such equitable lien or charge existed, still Edward Tracy in his life-time was indebted to Patrick Tracy to the amount of the said consideration advanced, and his estate is liable for the same. Patrick Tracy therefore, as administrator, has a right to retain the assets in his hands to the amount of such indebtedness.

4th. The real estate having been turned into money, in Edward Tracy's life-time, and the money, by his own statement and admission, belonging to his brother Patrick, held by him as trustee, and deposited for his brother's benefit in the Savings Bank, the claim of Patrick is stript of any difficulty that might have arisen had this claim been for the real estate, which stood in Edward's name at the time of his death. How that money originally became Patrick's is a matter of no consequence. Construe the statute to vest the legal and equitable estate in the property in Sheriff-street in Edward, free from all lien, charge, or claim by Patrick, for the consideration money advanced by him, Edward could and did admit and avow that Patrick was the owner of the money and bond and mortgage, and that he held the same in

trust for him. This trust is certainly not within the section of the statute relied upon. Even as a gift for moral consideration, made in the life-time of the intestate, and consummated by the creation of the trust which made the possession of Edward the possession of Patrick, Patrick would have a right to appropriate it to his individual use. Whoever received this personal property after Edward's death, holds it subject to the trust, and as Patrick's property.

THE SURROGATE.—Patrick Tracy purchased three lots on Sheriff-street, in this city, and the deed was taken in the name of his brother Edward. Edward sold two of the lots,and part of the proceeds was deposited in the Savings Bank and part invested on bond and mortgage. The last sale was made in December, 1841—and at that time he told a respectable and credible witness that the lot which he had just sold was really the property of his brother Patrick, and that he was about to invest the proceeds then in his hands for his brother's use. Edward left the city shortly after, and never having been heard from, administration was granted on his estate. Patrick Tracy now claims that investment as his property. Edward Tracy was in humble circumstances, and there seems to be no room for doubt, upon the evidence of several witnesses, that he held the property in question in trust for Patrick, who at the time was confined in the States Prison, from which he was subsequently released by pardon. A question has been raised as to the competency of parol evidence to establish such a trust, and that in fact involves the whole controversy ; for if the evidence is valid, the case is proved.

By the provisions of our statute, where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest, except as against creditors, in the person named as the alienee in such conveyance. 1 *R. S. p.* 728, §§ 51, 52, 53. The object of this rule was to

prevent secret resulting trusts from being created by the act of the party claiming their benefit. (*Revisers' Notes, 3 R. S., 2d ed., p.* 583. 1 *R. S., p.* 728, § 53.) It is obvious, therefore, that if the land standing in Edward's name had not been sold, the mere fact of the payment of the consideration by Patrick would not have established a resulting trust. Nor could any interest in the land attach to Patrick by force of a parol agreement, (2 *R. S., p.* 134, § 6, 7. *Brewster* vs. *Power*, 10 *Paige*, 568), unless the circumstances were such as to raise a trust by implication or operation of law.

The question still remains, however, whether Patrick having advanced the purchase money, Edward was not liable for the amount advanced, or for the proceeds of the estate after it was sold. I do not think the naked fact of advancement would establish a liability. The purchase money was not advanced with any expectation of a return, or of creating a debt, or an obligation on the part of Edward Tracy to repay ; and the law having declared there should be no trust as to the land, it makes the title of the grantee absolute, and freed from any trust to account for the proceeds or value.

But although an action would not lie for the recovery of the purchase money, or the proceeds, on the mere ground of advancement, yet the fact that Patrick Tracy paid for the land formed, in the language of the Supreme Court, in a case somewhat similar, (*Proseus* vs. *McIntyre*, 5 *Barb. S. C. R.*, 424.) " a good moral or conscientious consideration for a parol agreement" to account for the proceeds. If the fact of payment of the consideration by Patrick stood alone, there would be no recourse or remedy—but when that is followed by the declaration of Edward, that the proceeds were not his property, but belonged to Patrick, there seems to me enough to sustain a contract or agreement to hold the proceeds in trust. Although the statute declares the resulting trust in the lands void, that appears to be no reason why the trust should not be sustained as to the proceeds, when the evidence shows clearly an acknowledgment of the trust in those very funds, after the lands had been sold. The section of the stat-

ute which declares void " every grant or assignment of any
existing trust in lands, goods, or things in action, unless the
same shall be in writing," (2 *R. S., p.* 137, § 2), in its
terms, and according to the intention of the legislature, does
not refer to the *creation* of a new trust, but only to the
assignment of an existing trust.   The Revisers say, in their
note to this section, that the 6th section of title 1, chapter 7,
of the Revised Statutes, "provides for the creation of trusts
in land—and that a trust in personal property may be created
by parol, has never been doubted." (3 *R. S., p.* 658.)
(*See also Bailey* vs. *Boulcott,* 4 *Russ. C. R.,* 345. *Benbow* vs.
*Townsend,* 1 *M. & K.,* 506. *Fordyce* vs. *Willis,* 3 *Brown's
C. C.,* 576.) The case then stands thus :—The intestate
at the time of his decease was possessed of certain moneys.
It is proved satisfactorily that he declared and acknow-
ledged, freely and repeatedly, that the moneys were the pro-
perty of his brother Patrick, and were the proceeds of lands,
for the purchase of which Patrick had advanced the consid-
eration money.   It is proved, that he declared an intention
to invest them for his brother's benefit, and that he did not
claim them as his own—the investment in his own name,
under the circumstances, being quite consistent with the
objects of the trust.   There seems to me no reason why the
failure of the parties to put this in writing should defeat jus-
tice.   The law permits a trust as to personal estate to be
proved by parol ;  a good consideration is shown ;  and
although a case of this kind should be received with suspi-
cion and be carefully scrutinized, yet when the facts are well
established beyond a doubt, the trust will attach to the pro-
perty, in consonance with the understanding and agreement
of the parties.   The disappearance of Edward a short time
after this transaction, sufficiently accounts for the lapse of
time intervening before the claimant has been able to pre-
sent his case for judicial determination—and but for that cir-
cumstance, there is no ground for supposing the existence of
the trust would ever have been controverted.   I do not
understand that any doubt is entertained as to the facts, and

indeed it was suggested on the trial, that it was unnecessary to accumulate evidence beyond what had already been adduced. Being of opinion that there is no technical rule of law in the way of the claimant, and that it is competent to prove a declaration of trust in the proceeds of the lands and their investments, by parol, provided such declaration was made after the land had been sold and converted into money, I must decree that the trust has been proved and satisfactorily established.