The defendant Susan Hatmaker acquired the title to the lands in dispute since the passage of the acts of the 7th of April, 1848, and the 11th of April, 1849, for the more effectual protection of the property of married women, so that if she obtained it from a person other than her husband he has no interest or estate, by mere force of his marital rights, which could be the subject of levy and sale on execution.
The plaintiff claims title to the premises under the judgment and execution against Anthony Hatmaker, and the deed from the sheriff of the county of Tompkins. The judgment was docketed on the 22d May, 1840; the sale took place on the 24th March, 1853, and the sheriff's deed bears date the 3d of July, 1854. The judgment became a lien upon the lands which Anthony Hatmaker had at the time it was docketed, or at any time afterwards. (2R.S., 359, § 4.) And the sheriff's deed vested in the purchaser such right as the judgment debtor had to the lands, and nothing more. The plaintiff claims to recover the possession of the premises, as owner, upon the ground that the deeds of conveyance to Susan Hatmaker are fraudulent and void. It is therefore incumbent on him to show that Anthony Hatmaker had an interest or estate in the premises subject to levy and sale under the judgment and execution.
The deeds of conveyance to Susan were executed and delivered in 1851, and long after the judgment was obtained; and the court, at the special term, found as a fact that the purchase money was paid by Anthony, the husband, from his own means. These facts created what was known to the law as a resulting trust, that is, a trust arising by operation of law. These trusts arose: First. When the estate was purchased in the name of one person, and the consideration paid by another, a trust resulted in favor of the person who paid the consideration money; and, Second. When an express trust was declared only as to a part, and nothing was said as to the residue, that residue undisposed *Page 483 
of remained to the heir-at-law. (1 Cruise's Digest, 468, § 51, 470, §§ 56, 58; Lloyd v. Spillet, 2 Atk., 150.) The first of these trusts is abolished by section fifty-one of the statute of uses and trusts (1 R.S., 728), which declares, that "where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of the next section." The plain and obvious import of this language is to destroy the trust or use which, but for the statute, would have resulted to the person paying the consideration, as a legal consequence of that act. So far as he is concerned the trust is absolutely annihilated; but, by force of the next section, a trust may still result from the transaction, in favor of creditors who have equitable claims upon the money paid for the estate. It declares that "every such conveyance shall be presumed fraudulent, as against the creditors, at the time, of the person paying the consideration; and where a fraudulent intent is not disproved, a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands." It is to be observed that the trust results, not in favor of the person paying the consideration. In no event, except that specially provided for in section fifty-three, is he to take anything by the transaction; but it results in favor of his creditors, not so as to vest the title in them, or to the extent of the entire property, but only "to the extent that may be necessary to satisfy their just demands." These words plainly imply that the legal title is not transferred by operation of the statute, either to the person paying the consideration or to his creditors; but the estate vests in the alienee, and is made subject to the just claims of the creditors, to be distributed to them under the decree or judgment of the court, in proportion to the sums due to them and the diligence exerted by them. *Page 484 
Whatever remains after they are paid belongs to the alienee as his own property. I conclude, therefore, that a judgment and execution, against the person paying the consideration, and a sale and sheriff's deed under them, do not vest in the purchaser the legal title to the lands purchased, or any right whatever to the possession.
In Wait v. Day (4 Denio, 442), Chief Justice BRONSON (whose opinions are entitled to great consideration) arrives at a different conclusion. He concedes that the "trust never results for the benefit of the person paying the consideration, but only for the benefit of his creditors." "It does not," he says, "result to, but in favor of the creditors. It results to the debtor for their benefit." The trust by this construction, is made to result to the debtor, which is in direct conflict with the language of the section. It neither results to the debtor, nor in favor of the debtor, but it results "in favor of such creditors, to the extent that may be necessary to satisfy their just demands." Unless the trust created by the statute is converted into a legal estate, and made to vest in the debtor, it is manifest that the creditor's claim is one of equitable cognizance purely. The opinion to which I refer, concedes this also, and the learned justice resorts to section forty-five of the same statute to convert into a legal what would, but for the statute, have been an equitable estate. Two reasons may be assigned why this interpretation should not prevail: First. Section fifty-one declares, "that the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions" of section fifty-two. The title here spoken of is the legal title, the same that the plaintiff claims to have purchased, under his execution, at the sheriff's sale; and the title cannot be vested in two different persons at the same time; and, Second. The provisions of section forty-five doubtless have the effect claimed, upon a numerous class of trusts, but not upon trusts arising or resulting by operation of law; for section fifty expressly declares, that "the preceding *Page 485 
sections, that is, sections forty-five, forty-six, forty-seven, forty-eight and forty-nine, shall not extend to trusts arising or resulting by implication of law, nor be construed to prevent such express trusts as are hereinafter authorized and defined." Section forty-five cannot, therefore, perform the office claimed for it. In Brewster v. Power (10 Paige, 562), the late chancellor, WALWORTH, expressed, what seems to me to be the better opinion, that trusts resulting in favor of creditors, under sections fifty-one and fifty-two of the statute of uses and trusts, are not the subject of sale by the sheriff, under judgments and executions against the persons paying the consideration money. I am sensible that the force of this opinion is impaired by the consideration that it was not indispensable to the discussion of that case; still, it is valuable, as the deliberate conviction of an officer of much learning and experience in the principles of equity jurisprudence.
The judgment of the Supreme Court should be reversed.
All the judges, except DENIO, Ch. J., concurring,
Judgment reversed, and new trial ordered.