Comstock, J.
The rule at common law was, that if lands were conveyed to one person, the consideration for which was wholly paid by another, a trust resulted in favor of the person who paid the price. Such a trust, being raised by implication of law, was held not to be within the statute of frauds, and it was also hold that under the former statute of uses, (1 R. L., 74, § 4,) the interest of the cestui qua trust could be seized and sold as a legal estate on execution against him. (Footer. Colvin, 3 John., 216 ; Jackson v. Bateman, 2 Wend., 570; Guthrie v. Gardner, 19 id., 414; Jackson v. Walker, 4 id., 462.) In the present case, the plaintiff’s title depends on the same rules, if they still exist, and the question has been determined in his favor by the court below, in accordance with the decision of the former Supreme Court in Wait v. Day (4 Denio, 439 ), but opposed to the views of the late Court of Chancery, as stated in Brewster v. Power (10 Paige, 569.) After an attentive consideration, I am brought to the conclusion that the decision is erroneous.
Our present statute “ of uses and trusts” (1 R. S., 747), has made several very important changes in the law, and among them, I think, it has subverted the rules and principles which have just been stated. Under the old law the person who paid the consideration money had an estate in the land, by way of resulting trust, and the grantee in the conveyance who had paid nothing had no interest. I mean of course, no actual interest, without inquiring whether he held the formal legal title. Such was the relation between the grantee and the person who paid the purchase money; and the right to sell the land on judgment and execution against the latter, was the result of that relation. This was true, even when the transaction was intended to defraud creditors. In such cases the creditor could take the land in execution through the resulting trust, although, perhaps, neither courts of law nor equity would aid the cestui que trust for his own sake His own inability to arrest a frau *478 dulent trust did not affect the principle. The creditor, where the whole equitable interest was in his debtor, took the land, not through or by means of the fraud, but irrespective of it, and through the trust which the law implied.'
Now this, relation between the grantee and the person paying the purchase money appears to me to be entirely overthrown by the present statute of uses and trusts. It is declared (§51), that “ when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.” The next section (§ 52), declares that “ every such conveyance shall be deemed fraudulent as against the creditors at the time of the person paying the consideration ; and where a fraudulent interest is not disproved a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands.”
Now, it appears to me that this language is free from all ambiguity. The resulting trust of the common law is abrogated in the most explicit terms. The person paying the consideration money must take the conveyance to himself, or he can have no legal or equitable interest in the land. The very foundation, therefore, of the right, which the creditor had to take the land in execution, fails; but in place of that right, and of the common law principles on which it depended, the statute has declared a presumption of fraud, and, through the fraud, a resulting trust, not in favor of the debtor, but of the creditor only. There is no interest, legal or equitable, in the debtor, and therefore nothing to which a judgment and execution can attach; but instead of this there is a pure trust in favor of the creditor, which the statute impresses upon the legal estate in the hands of the grantee in the conveyance, and which can be enforced in equity only.
*479 In the case mentioned, of Wait v. Day, the statute was construed as though it read, “ a trust shall result to the debtor, in favor of the creditorand the conclusion was reached by applying to the supposed trust “ to the debtor” the previous section (§ 45), declaring that “ uses and trusts, except as authorized and modified in that article, are abolished, and that every estate and interest in lands shall be deemed a legal right, cognizable as such in the courts of law, except when otherwise provided ” in that chapter of the Statutes. This reasoning appears to me to be defective. I see no authority for interpolating the words, “ to the debtor,” in the fifty-second section. The trust there mentioned results not to the debtor, but in favor of the creditor. A trust to a person is a trust in his favor, and so a trust in favor of a person is a trust to him. These terms, in their ordinary meaning,* are entirely convertible. . When the legislature said that a trust shall result in favor of the creditor, they meant to declare just such a trust as they specified and no other. The statute recognizes only one trust, one trustee and one cestui que trust. The trustee is the grantee in the deed where the land is paid for by the debtor, and the cestui que trust is the existing creditor. According to the interpretation in Wait v. Day, there are two trusts, two trustees and two beneficiaries. The grantee in the conveyance is a trustee, and so is the debtor, because a trust, it is said, results to him for the creditor. He is, according to this, the trustee of a trust. He is also the beneficiary in the trust to him, and the creditor is also, in the trust for him or in his favor. I do not think the statute has thus involved the subject. It declares, in very simple terms, a trust for the benefit of creditors, and there it stops. The common law resulting trust is expressly abolished by the previous section (§ 51), and there is nothing for the creditor to look to except the statutory trust in his own favor, declared in this section *480 fifty-two. He stands by the express terms of the statute upon that trust, and not upon one to or for his debtors.
Section forty-five, it is true, turns every estate and interest, except as otherwise provided, into a legal right; but the debtor has no interest at all, and therefore there is nothing to be transformed. If upon sections fifty-one and fifty-two we could say there is still a resulting trust to the debtor or person paying the purchase money, then indeed section forty-five might transform it into a legal estate but for another difficulty: the intermediate fiftieth section declares that “ the preceding sections (including forty-five^ shall not extend to trusts arising or resulting by implicatioin of law.” Section forty-five therefore relates only to un authorized express trusts; in other words, such as are created or declared by some deed in writing. The trus in question is not of that character, whether it be regarded1 as resulting to the debtor or to the creditor. This prove clearly that section forty-five cannot be invoked to turn this trust into a legal estate. I see, in fact, no way to escape an inference in the opposite direction. The present statute of uses undoubtedly takes the place of all previous legislation on the subject of uses and trusts. The intention of the revisors and of the legislature was to frame a new and complete system. Now, let it be supposed, for argument’s sake, that the trust under consideration results to the debtor who paid the purchase money, or, according to Wait v. Day, “ to him for the creditorthat it is, in short, like the old common law resulting trust. The question then arises, where is the authority for selling such a trust on execution ? The forty-fifth section, as we have seen, does not turn it into a legal estate, and we shall look in vain for any other provision in the statute of uses which has that effect. On the contrary, section fifty justifies the conclusion that no implied trust undergoes this transformation.
*481 In general, mere trusts, whether express or implied, are not cognizable at law, and are not the subject of sale on execution. A statute may execute the use declared in the conveyance, and vest the legal estate in the cestui que use. Our former statute of uses (1 R. L., 72) did this, without, in terms, discriminating between uses or trusts expressed and those implied bylaw. Whether that statute executed the resulting trust in cases like the present, so as to vest the legal title in the beneficiary, as between him and the trustees, is not perhaps an inquiry of toy importance. The present statute, as we have seen, does make this discrimination in the very terms of sections forty-five and fifty. So the old statute (§ 4) declared it should be lawful for sheriffs to sell, under execution, lands held “to "the use or in trust” for the party against whom the process was issued, without any discrimination between express and resulting or implied trusts; and it also declared in terms that the purchaser should acquire by such sale a good and perfect title. But the present statute concerning executions (2 R. S., 368, § 26) declares that “lands, &c., holden by any one in trust for the use of another, shall be liable to judgments, executions, &c., against the person to whose use they are holden, in the cases and in the manner prescribed ” in the statute of uses; thus adopting the very discriminations of that statute. By the terms “ in the cases and in the manner,” &c., a direct reference is made, I think, to section forty-five, which, as we have seen, executes all uses and trusts so as to vest the legal title in the beneficiary, with the fundamental excep tions, contained in section fifty, of all resulting and all authorized express trusts. The statute quoted, concerning executions, is unintelligible, unless it has this reference and meaning; and. it follows that a resulting trust, even if we could find one to exist in this case analogous to the old common law trust in like cases, is no Icmger the subject of legal cognizance.
The judgment should be reversed and a new trial granted
*482 Brown, J.
The defendant Susan Hatmaker acquired the title to the lands in dispute since the passage of the acts of the 7th of April, 1848, and the 11th of April, 1849, for the more effectual protection of the property of married women, so that if she obtained it from a person other than her husband he has no interest or estate, by mere force of his marital rights, which could he the subject of levy and sale on execution.
The plaintiff claims title to the premises under the judgment and execution against Anthony Hatmaker, and the deed from the sheriff of the county of Tompkins. The judgment was docketed on the 22d May, 1840; the sale took place on the 24th March, 1853, and the sheriff’s deed bears date the 3d of July, 1854. The judgment became a lien upon the lands which Anthony Hatmaker had at the time it was docketed, or at any time afterwards. (2 R. S., 359, § 4.) And the sheriff’s deed vested in the purchaser such right as the judgment debtor had to the lands, and nothing more. The plaintiff claims to recover the possession of the premises, as owner, upon the ground that the deeds of conveyance to Susan Hatmaker are fraudulent and void. It is therefore incumbent on him to show that Anthony Hatmaker had an interest or estate in the premises subject to levy and sale under the judgment and execution.
The deeds of conveyance to Susan were executed and delivered in 1851, and long after the judgment was obtained; and the court, at the special term, found as a fact that the purchase money was paid by Anthony, the husband, from his own means. These facts created what was known to .the law as a resulting trust, that is, a trust arising by operation of law. These trusts arose: First. When the estate was purchased in the name of one person, and the consideration paid by another, a trust resulted in favor of the person who paid the consideration money; and, Second. When an express trust was declared only as to a part, and nothing was said as to the residue, that residue undisposed *483 of remained to the heir-at-law. (1 Cruise’s Digest, 468, § 51, 470. §§ 56, 58; Lloyd v. Spillet, 2 Atk., 150.) The first of these trusts is abolished by section fifty-one of the statute of uses and trusts (1 R. S., 728), which declares, that “ where a grant for a valuable consideration shall he made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of the next section.” The plain and obvious import of this language is to destroy the trust or use which, but for the statute, would have resulted to the person paying the consideration, as a legal consequence of that act. So far as he is concerned the trust is absolutely annihilated; but, by force of the next section, a trust may still result from the transaction, in favor of creditors who have equitable claims upon the money paid for the estate. It declares that “ every such conveyance shall be presumed fraudulent, as against the creditors, at the time, of the person paying the consideration; and where a fraudulent intent is not disproved, a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands.” It is to be observed that the trust results, not in favor of the person paying the consideration. In no event, except that specially provided for in section fifty-three, is he to take anything by the transaction ; but it results in favor of his creditors, not so as to vest the title in them, or to the extent of the entire property, but only “ to the extent that inay be necessary to satisfy their just demands.” These words plainly imply that the legal title is not transfered by operation of the statute, either to the person paying the consideration or to his creditors; but the estate vests in the alienee, and is made subject to the just claims of the creditors, to be distributed to them under the decree or judgment of the court, in proportion to the sums due to them and the diligence exerted by them.
*484 Whatever remains after they are paid belongs to the alienee as his own property. I conclude, therefore, that a judgment and execution, against the person paying the consideration, and a sale ,.and sheriff’s deed under them, do not vest in the purchaser the legal title to the lands purchased, or any right whatever to the possession.
In W::it v. Day (4 Denio, 442), Chief Justice Bkonson (whose opinions are entitled to great consideration) arrives at a different conclusion. He concedes that the “trust never results for the benefit of the person paying the consideration, but only for the benefit of his creditors.” “ It does not,” he says, “ result to, but in favor of the creditors. It results to the debtor for their benefit.” The trust by this construction, is made to result to the debtor, which is in direct conflict with the language of the section. It neither results to the debtor, nor in favor of the debtor, but it results “ in favor of such creditors, to the extent that may be necessary to satisfy their just demands.” Unless the trust created by the statute is converted into a legal estate, and made to vest in the debtor, it is manifest that -the creditor’s claim is one of equitable cognizance purely. The opinion to which I refer, concedes this also, and the learned justice resorts to section forty-five of the same statute to convert into a legal what would, but for the statute, have been an equitable estate. Two reasons may be assigned why this interpretation should not prevail: First. Section fifty-one declares, “that the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions” of section fifty-two. The title here spoken of is the legal title, the same that the plaintiff claims to have purchased, under his execution, at the sheriff’s sale; and the title cannot be vested in two different persons at the same time; and, Second. The provisions of section forty-five doubtless have the effect claimed, upon a numerous class of trusts, but not upon trusts arising or resulting by operation of law; for section fifty expressly declares, that “the pre *485 ceding sections, that is, sections forty-five, forty-six, forty-seven, forty-eight and forty-nine, shall not extend to trusts arising or resulting by implication of law, nor be construed to prevent such express trusts as are hereinafter authorized and defined.” Section forty-five cannot, therefore, perform the office claimed for it. In Brewster v. Power (10 Paige, 562), the late chancellor, Walworth, expressed, what seems to me to be the better opinion, that trusts resulting in favor of creditors, under sections fifty-one and fifty-two of the statute of uses and trusts, are not the subject of sale by the sheriff, under judgments and executions against the persons paying the consideration money. I am sensible that the force of this opinion is impaired by the consideration that it was not indispensable to the discussion of that case; still, it is valuable, as the deliberate conviction of an officer of much learning and experience in the principles of equity jurisprudence.
The judgment of the Supreme Court should be reversed.
All the judges, except Denio, Ch. J., concurring,
Judgment reversed, and new trial ordered.